# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERNHARD-THOMAS BLDG SYS, LLC, : | |
| Plaintiffs, : | |
| : | 3:04-cv-1317 (CFD) |
| v. : | |
| : | |
| WEITZ CO, LLC : | |
| and FEDERAL INS. CO. : | |
| Defendants. : | |

## RULINGS ON MOTION TO PRECLUDE AND MOTION IN LIMINE

Defendant Weitz Company filed two motions concerning the proposed testimony of Lawrence Gordon, a construction manager for Bernhard-Thomas in 2003 and 2004 and a proposed expert witness for the plaintiff. Weitz brings a motion to preclude his testifying as an expert, and also brings a motion in limine seeking to exclude from evidence three documents Gordon created when assessing Bernhard-Thomas's damages.

*Motion to Preclude Gordon's Expert Testimony*

When faced with expert testimony, the district court must act as a gatekeeper to ensure that an expert's testimony "rests on a reliable foundation." Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)). Expert testimony may only be admitted if it is relevant and the expert's methods are reliable. Daubert, 509 U.S. at 589. Federal Rule of Evidence 401 governs the relevancy inquiry; to evaluate reliability, the court considers three factors specified in Rule 702: (1) whether the testimony is "grounded on sufficient facts or data;" (2) whether the evidence "is the product of reliable principles and methods;" and (3) whether the

expert properly applied the principles and methodology to the facts of the case. Amorgianos, 303 F.3d at 265 (discussing Fed. R. Evid. 702). The goal of the reliability inquiry is to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). When assessing the admissibility of expert testimony, the court should refrain from considering the expert's conclusions unless the court "conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); see Daubert, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

So long as the expert's testimony meets the reliability and relevancy criteria, however, Rule 702 favors admissibility. Fed. R. Evid. 702, Advisory Committee Notes (2000) (noting that under Daubert, "the rejection of expert testimony is the exception rather than the rule"); Daubert, 509 U.S. at 589; Amorgianos, 303 F.3d at 267 (recognizing "the liberal admissibility standards" of Rule 702). Mere "minor flaw[s] in an expert's reasoning or a slight modification of an otherwise reliable method" speak to the weight of the expert testimony, not its admissibility. Amorgianos, 303 F.3d at 267. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

In this case, Weitz argues Gordon relied on incomplete data and that his methodology is unreliable. To create his damages estimates, Gordon, along with two other BT employees, went through the bid documents, change orders, and daily reports from the construction project. They organized the work or materials for which BT was not paid both chronologically, and by each

level of each building. Weitz argues this methodology is redundant, because some of the same claims were included in both the chronological and building-by-building reviews. In addition, Weitz argues that Gordon's calculations of the number of man-hours associated with specific tasks is unsupported, and that Gordon's calculations include claims that are in conflict with the terms of the Subcontract. After Weitz moved to preclude Gordon's testimony, BT filed a revised damages analysis reducing its claim by approximately $1.5 million dollars. BT argues the revised damages calculations have eliminated redundancies contained in Gordon's reports, and reflect this Court's ruling on summary judgment that BT cannot recover for any damages prior to the date specified by the lien waivers.

After reviewing Gordon's damages analysis, as well as the transcripts of his deposition and the depositions of two other Bernhard-Thomas employees who helped prepare the damages calculations, the Court concludes Gordon's calculations are reliable enough to be admitted as expert testimony. While there may be some speculative estimates or some imprecision in the way Gordon catalogued BT's claims, these imperfections go to the weight of his testimony, not its admissibility. The methods Gordon employed to arrive at these damages calculations essentially involve document review and arithmetic. With vigorous cross-examination by Weitz's counsel, the Court will be able to properly consider the accuracy of Gordon's conclusions. For these reasons, the renewed motion to preclude is denied.

*Motion in Limine to Exclude Documents*

Weitz also filed a motion to exclude several documents related to BT's damages calculations. These documents are numbered 70, 71 and 73 in BT's proposed list of exhibits in the Joint Trial Memorandum. Exhibit 70 is a breakdown of lien values prepared when Gordon

was analyzing BT's claim, Exhibit 71 is a spreadsheet containing Gordon's initial work on the claim, and Exhibit 73 is BT's revised damages analysis dated November 30, 2009.[1]  Weitz argues the exhibits are inadmissible hearsay, because they do not fall within the business records exception, and are also unreliable because they reflect shifting damages calculations.

Because Gordon will be allowed to testify as an expert witness (see discussion above), these proposed exhibits are governed in part by Rule 703 of the Federal Rules of Evidence, which states that if the facts or data upon which an expert relies are otherwise inadmissible, they shall not be disclosed to the fact-finder unless the court determines that "their probative value in assisting the [fact-finder] to evaluate the expert's opinions substantially outweighs their prejudicial effect."  Fed.R.Evid. 703.  The Court can best make that determination during trial if there is an objection to one of these exhibits or an objection to Gordon's testimony.  Therefore, the motion in limine is denied without prejudice to renewing the objections at trial.

For these reasons, the Defendants' Motion to Preclude the Expert Testimony of Lawrence Gordon [Dkt. #107] is DENIED.  The Defendants' Motion in Limine [Dkt. #127] is DENIED without prejudice. If Weitz wishes to re-depose Gordon on the revised damages analysis (Exhibit 73), Bernhard-Thomas shall make him available at a time reasonably in advance of trial.

SO ORDERED this   30th   day of November 2010, at Hartford, Connecticut.

　　　　　　　　　　　　　　　　　　　　 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[1] BT represented at oral argument on the motion in limine that it does not intend to seek to admit Exhibits 70 and 71 as full exhibits, because they reflect an outdated damages calculation.