**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BERNHARD-THOMAS BLDG. SYS., LLC, | : | |
| Plaintiff, | : | |
| | : | 3:04-cv-1317 (CFD) |
| v. | : | |
| | : | |
| WEITZ CO., LLC | : | |
| and FEDERAL INS. CO. | : | |
| Defendants. | : | |

**RULING ON MOTION FOR ATTORNEY'S FEES, INTEREST, AND COSTS**

**I.      Introduction**

This case arises out of a breach of contract dispute between the plaintiff, Bernhard-

Thomas Building Systems, LLC ("BT"), and the defendants The Weitz Company, LLC d/b/a The

Weitz Company-National ("Weitz") and Federal Insurance Company.  After a bench trial, this

Court awarded Weitz $1,287,604 in damages, plus interest.  Weitz has filed a motion for interest,

attorney's fees, and costs pursuant to its Subcontract Agreement ("Subcontract") with BT.

**II.      Background**

BT brought a five-count complaint against the defendants for judgment on a bond (which

was substituted for a mechanic's lien) pursuant to Conn. Gen. Stat. § 49-33 (Count One); breach

of contract (Counts Two and Three); breach of the covenant of good faith and fair dealing (Count

Four); and unjust enrichment (Count Five).  In response, Weitz brought a counterclaim alleging

that BT breached the Subcontract.

After a bench trial, this Court filed its Memorandum of Decision on August 16, 2011,

holding that Weitz terminated BT for cause and therefore BT was not entitled to recover damages

under the Subcontract.  The Court awarded damages to Weitz to the extent of its completion

costs, in the amount of $1,287,604, plus prejudgment interest, attorney's fees, and costs. Those supplemental amounts were subject to a post memorandum of decision motion by Weitz.

Weitz now moves for interest, attorney's fees, and costs. Weitz seeks $832,184.43 in interest, $427,924.25 in attorney's fees, and $123,049.75 in costs.

## III. Applicable Law and Discussion

### A. Recovery of Interest

Section 11.4 of the Subcontract between Weitz and BT provides, in relevant part:

> 11.4 <u>Consequences of Termination for Cause</u>
> The Contractor shall apply any unpaid balance of the Subcontract Sum to pay for such completion costs; provided, that the Contractor may first require the Subcontractor or its surety, if any, to fund any anticipated excess completion costs. In all such events, if the unpaid balance of the Subcontract Sum exceeds the costs of completing the Subcontractor's Work together with interest on such costs and together with any offsets and deductions available to the Contractor, such excess shall be paid to the Subcontractor. However, if such costs, interest, deductions and offsets exceed such unpaid balance, the Subcontractor or Subcontractor's surety shall pay the difference to the Contractor upon demand.

Although the Subcontract does not specify a rate of interest, it expressly entitles the Contractor, *i.e.*, Weitz, to interest on the unpaid completion costs. In the Standard Form Agreement between Owner and Construction Manager between LCS-Westminister Partnership I LLP and Weitz (the "Prime Contract"), Section 13.6.1 specifies that "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the at the legal rate prevailing from time to time at the place where the Project is located." BT argues that it is not bound by this language in the Prime Contract because it was not a party to this contract. The Court disagrees.

The Subcontract between BT and Weitz contains several provisions incorporating the Prime Contract. Under Section 1.2 of the Subcontract, the parties agreed that "the Contractor [Weitz] shall have the benefit of all rights, remedies and redress against the Subcontractor [BT] that the Owner, under the Prime Contract, would have against the Contractor [Weitz]." Further, this section provides, "[t]he provisions of the Subcontract Documents shall be in addition to and not in substitution of any of the provisions of the Prime Contract. The Prime Contract is available for review by the Subcontractor at the Contractor's office." Section 1.7 of the Subcontract provides, "[a]ll defined terms not otherwise defined in the Subcontract Documents are used as defined in the Prime Contract." Section 1.8 defines "Subcontract Documents" to include "the Prime Contract" and includes the following integration language: "The Subcontract Documents together form the contract between the parties thereto, and are as fully a part of the Agreement as if attached thereto or repeated therein. . . . The Subcontract Documents are available for review by the Subcontractor at the Contractor's office."

"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." 566 New Park Assocs., LLC v. Blardo, 97 Conn. App. 803, 810–11 (citing Randolph Constr. Co. v. Kings East Corp., 165 Conn. 269, 275-76 (1973)). "The documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires." Id.

Here, the language of the Subcontract clearly and unambiguously refers to the Prime

Contract as part of the contract between Weitz and BT. As stated above, Section 1.8, expressly states that "[t]he 'Subcontract Documents' consist of . . . the Prime Contract" and "[t]he Subcontract Documents together form the contract between the parties." Accordingly, the Court finds that the interest provision in the Prime Contract binds BT, and that provision provides interest at the "legal rate prevailing" in Connecticut.

Conn. Gen. Stat. § 37-3a provides the prevailing legal rate of prejudgment interest under Connecticut law.[1] See Milazzo v. Schwartz, 44 Conn. App. 402, 408 (1997). "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a. The statute sets the maximum rate of interest a court can award, no more than ten percent, but "the trial court will have to decide what the appropriate rate of interest for any such award should be." Sears, Roebuck and Co. v. Bd. of Tax Review, 241 Conn. 749, 763–66 (1997).

Weitz seeks prejudgment interest at a rate of ten percent (10%) per year. "Simply to chose 10.0% as the interest rate because that is the only number referenced in Gen. Stat. § 37-3a is not the proper exercise of judicial discretion." City of Norwalk v. Barton, No. FSTCV020187554S, 2009 WL 323785, at *11 (Conn. Super. Ct. Jan. 27, 2009). Based on recent Connecticut decisions, one in this District and the others in Connecticut Superior Court, this Court exercises its discretion and awards an interest rate of four percent (4%). See also Hartford Steam Boiler Grp., Inc. v. SVB Underwriting, Ltd., No. 3:04cv2127 SRU, 2011 WL 1899392, at *11 (D. Conn. May 19, 2011) (awarding an interest rate of four percent); DiLustro v. Pascarella,

---

[1] The Court refers to Conn. Gen. Stat. § 37-3a for an applicable rate of interest; it does not look to the statute to determine whether Weitz is entitled to interest because the Subcontract and Prime Contract expressly provide for interest.

No. CV106015451S, 2011 WL 4424756, at *4 (Conn. Super. Ct. Sept. 7, 2011) (applying an interest rate of five percent); Ulbrich v. Groth, No. X06CV84016022S, 2011 WL 3672032, at *5 (Conn. Super. Ct. July 26, 2011) (applying an interest rate of seven and one-half percent).

The Court agrees with Weitz that it should use the last date upon which Weitz requested payment for its completion costs—the date of the last change order, March 9, 2005—to begin the interest calculation. The amount owed on this date was $1,287,604. Interest of four percent (4%) per year on this amount, accruing from March 9, 2005 to October 31, 2011 (the day the judgment enters), totals $342,332.86.[2]

### B.    Recovery of Attorney's Fees

It is a well-established principle that "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 64, 66 (D. Conn. 2000) (quoting United States v. One Parcel of Prop. Located at 414 Kings Highway, No. 5:91-CV-158 EBB, 1999 WL 301704, at *4 (D. Conn. May 11, 1999)); see also Kaplan v. Rand, 192 F.3d 60, 70 (2d Cir. 1999). Connecticut follows the common law "American" rule in assessing the award of attorney fees. Under the "American" rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." Ames v. Comm'r. of Motor Vehicles, 267 Conn. 524, 532 (2004). "A successful litigant is entitled to an award of attorney's fees if they are

---

[2] Interest is calculated as follows:

| | |
|---|---|
| Principal | $1,287,604 |
| Per annum (4%) | $51,504.16 |
| Per Diem (365 days) | $141.11 |
| March 9, 2005 to October 31, 2011 | 2,426 days |
| Total Interest | $342,332.86 |

provided by contract." Jones v. Ippoliti, 52 Conn. App. 199, 209 (1999); see also MD Drilling

and Blasting, Inc. v. MLS Constr., LLC, 93 Conn. App. 451, 457–58 (2006).

Here, Section 12.1 of the Subcontract provides:

12.1    Attorney's Fees
In the event it shall become necessary for either party to institute legal proceedings
against the other party for recovery of any amounts due and owing under the Agreement,
it is expressly agreed that the prevailing party in any such action shall be entitled to
recover from the non-prevailing party all costs, including reasonable attorney's fees, of
pre-suit collection attempts, suit, and post judgment or settlement collection including
those incurred on appeal.

Likewise, Section 13.4.3 of the Prime Contract, which the Court has found was integrated into

the Subcontract, provides: "In the event of any litigation between the parties, the prevailing party

shall be entitled to reimbursement for all reasonable attorneys' fees, expert fees, court costs, and

all other third-party costs of the litigation incurred by the prevailing party."

Connecticut courts determine the reasonableness of fees by reviewing the twelve factors

cited in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See, e.g., Ernst

v. Deere & Co., 92 Conn. App. 572, 576 (2005); Home Funding Grp., LLC v. Kochmann, No.

3:06CV1234 (HBF), 2008 WL 4298325, at *5 (Sept. 18, 2008 D. Conn.). These factors are: (1)

the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite

to perform the legal service properly; (4) the preclusion of employment by the attorney due to

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of

the case; (11) the nature and length of the professional relationship with the client; and (12)

awards in similar cases. See Johnson, 488 F.2d at 717–19. In determining reasonableness, "[t]he

court … [is] not required to consider each of the twelve factors individually, but instead [is] required to consider the full panoply of factors and not base its decision solely on one of the elements." Riggio v. Orkin Exterminating Co., Inc., 58 Conn. App. 309, 318 (2000).

Weitz seeks attorney's fees in the amount of $394,772.00 paid to Murtha Cullina LLP and $33,152.25 paid to Ciulla & Donofrio.[3] In support of its application, Weitz's counsel submitted detailed billing records and an affidavit listing attorney billing rates. Federal Insurance Company's counsel also submitted detailed billing records and an affidavit.

### 1.    Murtha Cullina Fees

BT contends that Weitz's claim for the Murtha Cullina attorney's fees does not distinguish between the fees attributable to the litigation of Weitz's counterclaim and the fees attributable to the defense of BT's claims. BT argues that the Subcontract language limits the award of attorney's fees to those attributable to the recovery of the prevailing party's claim and, therefore, Weitz may only recover the attorney's fees attributable to the recovery of its breach of contract counterclaim. BT cites one Connecticut decision to support this proposition, see Total Recycling Services of CT, Inc. v. Connecticut Oil Recycling Services, LLC, 129 Conn. App. 296 (2011). This decision, however, does not address the issue of whether defendant must "distinguish between fees incurred in prosecuting the successful breach of contract claims and defending plaintiffs' unsuccessful breach of contract claims." See id. at 302 n.3 (noting that the court would not reach this issue because the trial court did not address it). Instead, in Total Recycling Services, the defendant sought attorney's fees on its counterclaims for breach of three

---

[3] Murtha Cullina represented Weitz and Ciulla & Donofrio represented Federal Insurance Company in this action.

separate contracts, but only two of the three contracts contained provisions allowing for the recovery of attorney's fees. Id. at 299. In its motion for attorney's fees, the defendant "did not distinguish the items of work on the separate contracts with respect to which the defendant successfully counterclaimed." Id. The trial court refused to award any fees to the defendant because it concluded that it was "necessary for the defendant to identify which reasonable attorney's fees were incurred in prosecuting its breach of contract counterclaim with regard to the contracts that specifically provide for attorney's fees." Id.

Here, under the Subcontract and the Prime Contract, the prevailing party is entitled to reasonable attorney's fees in a suit for recovery of any amounts owed under the Subcontract. The parties agree that this provision entitles Weitz to attorney's fees incurred in furtherance of its breach of contract counterclaim. The parties disagree over whether this provision entitles Weitz to attorney's fees incurred in defending BT's claims for judgment on a bond pursuant to Conn. Gen. Stat. § 49-33 (Count One), breach of contract (Counts Two and Three), breach of the covenant of good faith and fair dealing (Count Four), and unjust enrichment (Count Five).

The U.S. Court of Appeals for the Second Circuit has dealt with this issue in Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 18 (2d Cir. 1992). In Diamond, the plaintiff sued the defendant for breach of a franchise agreement and the defendant asserted three affirmative defenses and eight counterclaims. Similar to this case, the counterclaim(s) arose out of a common nucleus of facts. The jury found for the plaintiff and rejected the counterclaims, and the plaintiff then moved for attorney's fees under the franchise agreement, which was governed by New York law. The defendant argued, similar to BT here, that the plaintiff was not entitled to recover attorney's fees for defending against the counterclaims. The Second Circuit

rejected this argument and held that it is "the nature—not the nomenclature—of a claim [that] is controlling." Id. "Thus, where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim." Id. (citations omitted). This reasoning has been followed in the U.S. District Court for the District of Connecticut and in the Connecticut Superior Court, applying Connecticut law. See Rand-Whitney Containerboard L.P. v. Montville, Civ. No. 3:96CV413 (HBF), 2006 WL 2839236, at *14 (D. Conn. Sept. 5, 2006) ("The law in Connecticut clearly follows the analysis applied in Diamond."); J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co., No. 3:98CV145 DFM, 2000 WL 852331, at *5–6 (D. Conn. Mar. 31, 2000); Atlantic Pipe Corp. v. Quadrange LP, No CV 87-0336982, 1993 WL 454203, at *2 (Conn. Super. Ct. Oct. 27, 1993). "Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees and damages." Atlantic Pipe, 1993 WL 454203, at *2. These decisions explained that if the defendants had successfully prosecuted their counterclaims, the plaintiffs' rights of recovery on the contracts would have been extinguished. Thus, the courts found that the plaintiffs were entitled to attorney's fees for defending against such counterclaims.

In this case, had BT successfully prosecuted its claims, Weitz's right of recovery on its breach of contract counterclaim would have been extinguished. Because Weitz's right of recovery under the Subcontract was necessarily tied into a successful defense of BT's claims, Weitz is entitled to fees for both the time spent litigating its counterclaim and its defense of BT's claims. Further, the time that Weitz spent successfully litigating its counterclaim was

intertwined with the time spent in defense of BT's claims because BT's claims and Weitz's counterclaim arise from a common nucleus of facts. Because the same factual circumstances led to both Weitz's and BT's breach of contract claims, and BT's others claims are dependent on its breach of contract claim, Weitz is entitled to all of its reasonable attorney's fees.

Next, the Court must determine whether the fees incurred by Weitz are reasonable. Counsel for Weitz asserts that the legal fees are reasonable in light of the fact that BT brought this action for a sum in excess of $3,450,000. BT does not challenge the amount of attorney's fees submitted by Murtha Cullina on the basis of unreasonableness. Taking this into account, and based on the Johnson factors, the Court finds that Weitz is entitled to the full amount it seeks in attorney's fees paid to Murtha Cullina, totaling $394,772.00.

### 2.    Ciulla & Donofrio Fees

BT further argues that Weitz is not entitled to the attorney's fees it paid to Ciulla & Donofrio, counsel for Federal Insurance Company, because (1) Weitz chose to incur the costs of the bond rather than pursuing its statutory remedy to seek discharge of the mechanic's lien; (2) the fees do not relate to the recovery of the prevailing party's claim; and (3) no statute or contractual provision exists to waive the American rule on attorney's fees in this context.

In April of 2004, BT filed a mechanic's lien against the construction project, and Weitz substituted a bond in lieu of the mechanic's lien in the sum of $3,877,211.20, with Federal Insurance Company as surety. The only claim against Federal Insurance Company in this action is Count One, for judgment on the bond pursuant to Conn. Gen. Stat. § 49-33 et seq. Because the Court found that Weitz terminated BT for cause, and therefore BT was not entitled to recover damages under the Agreement, it found that BT could not recover on the bond.

Federal Insurance Company was not a party to the contract between Weitz and BT and therefore it is not entitled to fees under Section 12.1 of the Subcontract. Although the Court finds that Weitz is entitled to the attorney's fees it incurred in litigating its counterclaim and defending against BT's claim, the Court finds that Weitz is not entitled to the fees incurred by Ciulla & Donofrio in defending Federal Insurance Company against Count One of the complaint. At oral argument, counsel for Weitz conceded that the fees incurred by Federal Insurance Company were entirely defensive and therefore not intertwined with the pursuit of Weitz's counterclaim. Thus, the Court denies Weitz's request for the Ciulla & Donofrio attorney's fees.

## C.    Recovery of Costs

Weitz seeks costs pursuant to Section 12.1 of the Subcontract in the amount of $123,049.75.[4] Weitz's counsel submits an itemization of costs in support of its claim, specifying the following costs: trial transcripts; deposition transcripts; expert witness fees; trial witness travel and subsistence costs; copying costs; premiums paid upon the bond; removal from state court filing fee; and costs incurred by Ciulla & Donofrio.

BT argues that Weitz's itemization of costs does not distinguish between those costs incurred in the successful prosecution of Weitz's counterclaim (for which reimbursement would be allowed) and those costs incurred in the defense of BT's claims (for which it argues no contractual basis exists to seek reimbursement). BT claims that much of the deposition transcript costs, the bond premium costs, and the Ciulla & Donofrio costs were not incurred in litigation of Weitz's counterclaim. BT also argues that the Subcontract does not allow for the recovery of expert witness fees. Further, BT asks the Court to deny Weitz's claim for costs and allow Weitz

_____

[4] The costs incurred by Ciulla & Donofrio are included in this amount.

to file a taxation of costs pursuant to 28 U.S.C. § 1920, which would exclude much of the expert witness fees and some other costs.

Based on the discussion above, the Court finds that Weitz does not need to distinguish its costs between costs incurred in litigating its counterclaim and costs incurred in defending against BT's claims. At issue, however, is whether Weitz is entitled to "all costs" under the Subcontract and Prime Contract or whether the costs should be limited to those taxable as costs under Local Rule 54 of the District of Connecticut, Fed. R. Civ. P. 54(d), and 28 U.S.C. § 1920.

These rules provide the framework for determining the proper award of statutory costs, available to the prevailing party in all cases, but do not apply if a contractual provision authorizes costs and expenses, as part of an attorney's fee award. Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., No. 04 Civ. 3854 (LAK)(AJP), 2008 WL 4833025, at *8 (S.D.N.Y. Nov. 3, 2008); see, e.g., Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 455 (1987) ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."); Rangolan v. County of Nassau, 370 F.3d 239, 250 (2d Cir. 2004) ("[T]he district court has no discretion to award costs not authorized by statute or contractual provision." (citations omitted)).

Here, the contractual attorney's fee provision in the Subcontract and Prime Contract clearly provides for "all costs, including reasonable attorney's fees" and "all reasonable attorney's fees, expert fees, court costs, and all other third-party costs of the litigation," rendering Local Rule 54 and 28 U.S.C. § 1920 inapplicable. UT Fin. Corp., 2008 WL 4833025, at *9; see also Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc., No. 3:07-cv-01364 (CSH), 2010 WL

2388439, at *1 (D. Conn. June 9, 2010) (awarding the defendant *all* costs under the parties'

contract because the contract provided that "in the event of any legal action, the prevailing party

shall be entitled to recover from the other party all costs, expenses and reasonable attorney's fees,

expert witness fees, and any other costs incurred to bring or defend such action"); Ursa Minor

Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 WL 1842042, at *9 (S.D.N.Y. May

30, 2001) (awarding costs under contractual attorney's fee provision, including "photocopying,

printing, computerized legal research, travel expenses, long distance telephone charges, staff

overtime, and courier fees").

The Court finds that Weitz is entitled to its requested costs, including the expert witness

fees, as a component of its contractual attorney's fees award. Although the Subcontract does not

specify expert fees, the Prime Contract does, and therefore this Court finds that Weitz is entitled

to such costs.

The Court, however, does not award the costs of Ciulla & Donofrio, totaling $4,179.74,

because its costs were incurred in defending Federal Insurance Company, not Weitz, and Federal

Insurance Company was not a party to the Subcontract or Prime Contract. In sum, the Court

awards Weitz a total of $118,870.01 in costs.

## IV. Conclusion

For the reasons set forth above, the defendant's motion for attorney's fees [Dkt. # 150] is

GRANTED in part. BT shall pay Weitz $1,287,604 in damages plus $342,332.86 in

prejudgment interest plus $513,642.01 in attorney's fees and costs, in accordance with this

ruling.

The Clerk is ordered to enter judgment in favor of the defendants and close this case.

SO ORDERED this  31st  day of October 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**